UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AMINADAB TORRES, as Personal
Representative of the Estate of
MARTIN ROMERO TORRES, deceased,
et al.,

    Plaintiffs,

vs.                    CASE NUMBER: 99-1662-CV-18-B

ORANGE COUNTY, FLORIDA, etc.,
et al.,

    Defendants.
_____/

## MOTION TO DISMISS OF DEFENDANTS, WEST, MATTHEW, MOORE, GREEN, ACKLEY, COLEMAN, HODGES, AND MARTINEZ AND SUPPORTING MEMORANDUM OF LAW

Defendants, Bernadine West, Janice Matthew, Marilyn Moore, Joann Green, Toni Ackley, Vicky Coleman, Sandy Hodges, and Jean Martinez, pursuant to Federal Rule of Civil Procedure 12, hereby respectfully request the court enter an order dismissing the complaint as to them. As grounds therefore, these defendants state:

1. The complaint fails to state a cause of action against these defendants based on 42 U.S.C. § 1983 for the violation of the decedent's 8th Amendment rights against cruel and unusual punishment. The allegations are factually insufficient to set forth a prima facia case that any of these defendants, on an individual basis, were deliberately indifferent to the decedent's serious medical needs.

2. The complaint improperly seeks damages on behalf of five plaintiffs. Pursuant to federal and state law, only one individual

18

plaintiff has standing to pursue damages for violation of civil rights under 42 U.S.C. § 1983.

3. The complaint improperly makes a claim for the decedent's pain and suffering.

4. The complaint improperly makes a claim for hedonic damages on behalf of the plaintiff.

### MEMORANDUM OF LAW

These defendants respectfully submit the following memorandum of law in support of their motion to dismiss.

I. <u>COUNT I OF THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION AGAINST THESE DEFENDANTS FOR "DELIBERATE INDIFFERENCE"</u>

A. <u>Introduction:</u>

Count I of the complaint makes claims against each of these defendants in their individual capacities pursuant to 42 U.S.C. § 1983. Count I claims that each individual defendant was deliberately indifferent to the decedent's serious medical needs. However, as will be shown below, the factual allegations against each of these defendants are insufficient, as a matter of law, to support a prima facia case of deliberate indifference. Consequently, Count I should be dismissed as to each of them.

B. <u>Allegations against each defendant:</u>

The following summarizes the allegations against each of these defendants as set forth in the complaint.

1. <u>Marilyn Moore:</u> The only allegations against Ms. Moore are found in ¶ 41 of the complaint. According to the allegations, the decedent had stopped taking his psychotropic medication on or about December 18, 1997, and that fact allegedly

2

had been brought to Ms. Moore's attention on December 21, 1997. According to ¶ 41, Ms. Moore made a note that this fact should be discussed with the mental health service.

    2. <u>Bernadine West:</u> The allegations against Ms. West are found in ¶ 42, 55, and 59. Paragraph 42 alleges that on December 22, 1997, at approximately 6:40 p.m., Ms. West noted that the decedent was displaying significant neurologic symptoms that appeared to be the side effects of psychotropic medication. It is further alleged that Ms. West notified her supervisor and Dr. Blakey, the jail's medical director.

Paragraph 55 alleges that on December 26, 1997, Ms. West observed significant neurologic deficits, including drooling. Paragraph 59 alleges that on December 27, 1997, Ms. West reported that the decedent had fallen while attempting to get on and off the toilet in his cell.

    3. <u>Vicky Coleman:</u> The only allegation against Ms. Coleman is found in ¶ 43. It is alleged that she was notified on December 23, 1997, by Ms. Senior of decedent's neurologic symptoms. Ms. Coleman allegedly agreed to monitor and follow up on the decedent.

    4. <u>Jean Martinez:</u> The only allegations against Ms. Martinez are found in ¶ 48. It is alleged that on December 24, 1997, Ms. Martinez contacted Dr. Blakey regarding decedent's serious neurological symptoms. Dr. Blakey then ordered decedent's transfer to Florida Hospital for evaluation. After decedent returned, Ms. Martinez allegedly observed him to be sluggish.

5.  <u>Joann Green:</u>  The allegations against Ms. Green are found in ¶ 51, 53, 54, 58, and 63.  According to ¶ 51, on December 24 and 25, 1997, Ms. Green failed to discontinue the decedent's psychotropic drugs and failed to have the decedent evaluated by appropriate psychiatric personnel in accordance with the recommendations of the jail's mental health unit.

Paragraph 53 alleges that on December 26, 1997, at approximately 9:00 a.m., Ms. Green noted the decedent to have erratic neurologic behavior and that the decedent was not taking his medication.  As a result of the failure to take the medication and because of his "physical appearance," Ms. Green referred the decedent to the jail's mental health unit.  Ms. Green also brought the decedent to the nurse's station for a vital sign check at 9:25 a.m.  The decedent allegedly had to be placed in a wheelchair because of his weakness and neurologic symptoms.

Paragraph 54 does not allege any care issue with regard to the decedent.  Instead, it is alleged that on December 26, 1997, at approximately 10:30 a.m., Ms. Green spoke to the decedent's family and assured them that the decedent was fine.

Paragraph 58 alleges that on December 27, 1997, between 8:00 a.m. and 3:00 p.m., Ms. Green observed continued neurologic deficits and that the decedent had removed his clothes secondary to a fever.  Ms. Green allegedly passed this information on to her supervisor, which the complaint presumes is co-defendant, Sandy Hodges.  It is also alleged that Ms. Green refused to provide any medical information concerning the decedent to his parents.

4

Paragraph 63 alleges that Ms. Green received a call on December 28, 1997, from the decedent's mother, Aminadab Torres. Ms. Torres reportedly requested that the decedent be seen at a hospital or receive more advanced medical treatment. Ms. Green allegedly ignored and refused this request "through an exhibition of deliberate indifference to Martin's serious medical and psychiatric needs."

6. <u>Toni Ackley and Janice Matthew:</u> The only allegations against Ms. Ackley and Ms. Matthew are found in ¶ 51. These are the same allegations that were made against Ms. Green in that paragraph, namely that on December 24 and 25, 1997, the nurses failed to discontinue decedent's psychotropic drugs and failed to have decedent evaluated by appropriate psychiatric personnel in accordance with the recommendations of the mental health unit.

7. <u>Sandy Hodges:</u> The only factual allegations specifically against Ms. Hodges are found in ¶ 57. It is claimed that in the early morning hours of December 27, 1997, Ms. Hodges was informed by Ms. Senior of the decedent's condition and continued symptomology. Ms. Hodges, in turn, reported decedent's condition to "main." It is further alleged that Ms. Hodges was instructed, presumably by Dr. Blakey, to keep the decedent on his present medication until he was stable.

Ms. Hodges is also mentioned in ¶ 58 as the nurse to whom Ms. Green reported between 8:00 a.m. and 3:00 p.m. on December 27, 1997. However, the inference from the allegation is that the

plaintiff is not sure whether Ms. Hodges was the person to whom the report was made.

C.  Law concerning deliberate indifference:

It is well settled that the 8th Amendment's proscription of cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). However, the Supreme Court also clearly stated that treatment which was merely medical malpractice was insufficient to support a § 1983 claim based upon deliberate indifference. In fact, in Estelle v. Gamble, the Supreme Court reinstated the district court's dismissal of a prisoner's § 1983 complaint for failure to state a cause of action. The Supreme Court noted that the complaint's primary allegation was that "more should have been done" to diagnose and treat a back injury. The Court explained that a medical decision not to order an x-ray or like measures does not represent cruel and unusual punishment. At most, it is medical malpractice. Estelle at 107.

In subsequent cases, the Supreme Court has explained that the 8th Amendment applies only to punishments and that prison conditions are only punishment if a mental element of punitive intent is shown. See Wilson v. Seiter, 501 U.S. 294 (1991). Thus, conditions of confinement violate the 8th Amendment only if they (1) rise to the level of a "serious deprivation;" and (2) result from the official's deliberate indifference. Ibid at 297-299.

It is important to note that the Supreme Court in Wilson and subsequent cases refer to the first required element as the

"objective component" for scrutinizing the alleged deprivation. The second element is a "subjective component" which examines the official's mental intent. In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court defined the exact subjective mental state required for "deliberate indifference":

> [A] prison official cannot be found liable under the 8th Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The 8th Amendment does not outlaw cruel and unusual "conditions;" it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. <u>But, an official's failure to alleviate a significant risk that he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment</u>.

Farmer at 837-38 [emphasis supplied].

Thus, pursuant to Farmer, liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk. Proof that the defendant should have perceived the risk, but did not, is insufficient. Thus, the official must have a subjectively "sufficiently culpable state of mind." This requirement follows from the principle that only the

unnecessary and wanton infliction of pain implicates the 8th Amendment. <u>Farmer</u>; <u>Cottrell v. Caldwell</u>, 85 F. 3d 1480 (11th Cir. 1996); <u>Campbell v. Sikes</u>, 169 F. 3d 1353 (11th Cir. 1999).

With regard to these defendants, all of whom are nurses, the 11th Circuit case of <u>Campbell v. Sikes</u>, <u>supra</u>, is on point, particularly with regard to its affirmance of the summary judgment for defendant, Valarie Ford, a mental health counselor who had treated the plaintiff.

According to the <u>Campbell</u> opinion, Ford, as a mental health counselor, was untrained in diagnosing mental illness and unauthorized to prescribe medication. However, the plaintiff in <u>Campbell</u> alleged that Ford had been deliberately indifferent to her serious medical needs for drafting a memorandum to the prison's security personnel and for allegedly delaying treatment to the plaintiff. It is this second liability theory which makes the 11th Circuit's decision applicable to these defendants in this case.

The plaintiff in <u>Campbell</u> claimed that Ms. Ford had been deliberately indifferent because of an overnight delay in treatment once it had been determined that plaintiff needed to go to a hospital for further evaluation. Plaintiff had submitted an affidavit of a medical expert that Ms. Ford "had to have known" that further and additional mental help and psychological evaluation and assessment were required.

However, the 11th Circuit affirmed the summary judgment for Ms. Ford, finding that the evidence presented did not suffice to support a finding that Ms. Ford knew her care was grossly

8

inadequate, but persisted in that treatment. Even though the evidence might have supported a finding that Ms. Ford's care was grossly inadequately or finding that Ms. Ford <u>should have known</u> that her care was grossly inadequate, the 11th Circuit ruled that this was insufficient to support a finding of deliberate indifference. Since there is no liability for an official's failure to alleviate a significant risk that she should have perceived, but did not.

D. <u>Argument:</u>

There are no factual allegations in the complaint to support a prima facia finding that any of these defendants had the required subjective mental state to show deliberate indifference. That is, the facts alleged in the complaint, and taken in the light most favorable to the plaintiff, do not show that any of these defendants actually knew of an excessive risk to inmate health or safety and then disregarded that risk. <u>Farmer v. Brennan</u>, <u>supra</u>.

The 11th Circuit's decision in <u>Campbell</u> concerning Ms. Ford is on point. As with Ms. Ford, these defendants are staff and not physicians. They are not able to diagnose nor are they able to prescribe or discontinue medicines. Additionally, as with Ms. Ford, the theory against each of these defendants, on an individual basis, is that she "should have done more," See <u>Estelle v. Gamble</u>, <u>supra</u>, or that she failed to alleviate a significant risk that "[she] should have perceived, but did not . . .". See <u>Campbell v. Sikes</u>, <u>supra</u>. There are no factual allegations that any of these defendants knew that the care she provided on an individual basis

9

was "grossly inadequate" and that she still persisted in that care. See Campbell v. Sikes, supra.

To be sure, plaintiff has used "buzz words" in the complaint, such as "deliberate indifference." These defendants respectfully submit, however, that these buzz words do not substitute for factual allegations in order to make a prima facia showing of the requisite culpable state of mind to support a § 1983 claim based on deliberate indifference. An examination of the factual allegations against each of these defendants, shows that the plaintiff has not stated a cause of action for deliberate indifference against them on an individual basis.

Starting with Ms. Moore, the only allegation is that on December 21, 1997, she learned that the plaintiff had stopped taking his psychotropic medication. She made a note of this fact in the chart. The alleged deliberate indifference is that she did not follow up with the plaintiff. As discussed above, it is well settled that the failure "to do more" is not a basis for a deliberate indifference claim.

The allegations against Ms. West in ¶ 42, 55, and 59 are similar. In essence, the plaintiff claims that Ms. West should have done more after she observed and noted allegedly significant neurologic deficits. Again, as discussed above, the failure to do more or the failure to alleviate a significant risk that should have been perceived, but was not, cannot be the basis of a deliberate indifference claim.

The allegations in ¶ 43 against Ms. Coleman are also insufficient. They simply state that on December 23, 1997, Ms. Coleman was notified by another nurse of the plaintiff's condition and that she agreed to monitor and follow up his condition. Again, this fits squarely within the rulings of Estelle and Campbell.

The allegations against Ms. Martinez in ¶ 48 actually show the opposite of deliberate indifference. Ms. Martinez not only reported the plaintiff's alleged neurologic symptoms to her superior, but as a result of that report, the decedent was transferred to Florida Hospital for an evaluation. When he returned from the hospital with the diagnosis of the flu, it was reasonable for Ms. Martinez to rely on that diagnosis in terms of the care and treatment of the decedent.

The allegations against Ms. Green in ¶ 51, 53, 54, 58, and 63 are the most extensive of all these defendants. However, the alleged actions of Ms. Green also fall within the rulings of Estelle and Campbell on the issues of failure to do more and failure to alleviate a significant risk that was not perceived. This is particularly true for the contact after the decedent's trip to the emergency room on December 24, 1997, where the emergency room doctor allegedly diagnosed the decedent as suffering from the flu.

The claims against Ms. Ackley and Ms. Matthew are as strained as the claims against Ms. Martinez. The only allegations against Ms. Ackley and Ms. Matthew are that they failed to discontinue the decedent's psychotropic drug and that they failed to have him

11

evaluated by a psychiatrist as recommended by the jail's mental health unit (¶ 54 of the complaint). This clearly falls within the rulings of Estelle and Campbell.

Finally, the only firm allegations against Ms. Hodges, found in ¶ 57, plaintiff alleges that in the early morning hours of December 27, 1997, Ms. Hodges reported the decedent's condition to "main." She was then instructed by her supervisor, presumably Dr. Blakey, the jail's medical director, to keep the decedent on his present medications until he was stable. Thus, the deliberate indifference claim against Ms. Hodges is based on her alleged actions in following the orders of her superior, the jail's medical director. As a nurse, Ms. Hodges did not have the authority to discontinue medications that had been prescribed by a medical doctor.

These defendants respectfully submit that the factual allegations against each of them individually are insufficient to establish a prima facia claim that any of them possess the subjective mental intent required to support a deliberate indifference claim pursuant to § 1983. Consequently, these defendants respectfully request the court dismiss Count I as to each of them.

II. **THE PLAINTIFFS HAVE MADE IMPROPER DAMAGES CLAIMS PURSUANT TO FEDERAL AND STATE LAW**

These defendants respectfully submit that the plaintiffs have set forth damages claims which are improper under both federal and state law. They adopt the arguments made by Orange County on these

issues as set forth in Orange County's motion to dismiss and supporting memorandum of law dated February 4, 2000.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail this 21st day of February, 2000, to: Kenneth S. Fredericksen, Esquire, 116 America Street, Orlando, FL 32801; Anthony Suarez, Esquire, 517 W. Colonial Drive, Orlando, FL 32804; Jeanelle G. Bronson, Esquire, Post Office Box 538065, Orlando, FL 32853; Bruce R. Bogan, Esquire, Post Office Box 4973, Orlando, FL 32802; D. Andrew DeBevoise, Esquire, 315 E. Robinson Street, Suite 510, Orlando, FL 32801; Reginald D. Hicks, Esquire, Post Office Box 2248, Orlando, FL 32802.

                                     _____
HENRY W. JEWETT, II, ESQUIRE
Fla. Bar No.: 380024
ART C. YOUNG, ESQUIRE
Fla. Bar No.: 935379
RISSMAN, WEISBERG, BARRETT, HURT,
  DONAHUE & McLAIN, P.A.
201 E. Pine Street, 15th Floor
Orlando, FL 32801
(407) 839-0120
Attorneys for Defendants,
B. West, LPN, Janice Matthew, LPN,
Marilyn I. Moore, LPN, Joanne Green,
LPN, Toni L. Ackley, LPN, Nursing
Supervisor Coleman, Sandy Hodges, RN,
Jeannie Martinez, LPN

HWJ:ap

13